No. 23-273

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

*SANDRA MOYER, et al. v. HOME POINT FINANCIAL CORPORATION f/k/a MAVERICK FUNDING CORPORATION*

On Petition for Permission to Appeal
from the United States District Court for the District of Maryland
Civ. No. 1:20-cv-03449-RDB (Bennett, J.)

**REPLY OF DEFENDANT MR. COOPER GROUP, INC.
f/k/a HOME POINT FINANCIAL CORPORATION f/k/a
MAVERICK FUNDING CORPORATION IN SUPPORT OF
PETITION FOR PERMISSION TO APPEAL UNDER RULE 23(f)**

MAYER BROWN LLP
Thomas V. Panoff
Christopher S. Comstock
71 South Wacker Drive
Chicago, IL 60606
T: (312) 782-0600
F: (312) 701-8821
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com

*Attorneys for Defendant-Petitioner Mr. Cooper Group, Inc. f/k/a Home Point Financial Corporation f/k/a Maverick Funding Corporation*

## TABLE OF CONTENTS

**PAGE**

I. ARGUMENT ...................................................................................................1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................3

*In re Marriott, Int'l, Inc.*,
    78 F.4th 677 (4th Cir. 2023) ............................................................................1, 3

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000) ............................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................1, 2, 3

I. **ARGUMENT**

Petitioner Home Point submits the following Reply to address Plaintiff's mistaken argument that Home Point waived its commonality and predominance arguments with respect to damages. In its petition, Home Point explained that both commonality and predominance under Rule 23 require a plaintiff to demonstrate that "damages are capable of measurement on a classwide basis." Petition at 17-18 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)); *see also In re Marriott, Int'l, Inc.*, 78 F.4th 677, 683 (4th Cir. 2023) (requiring "a 'common, classwide *method* for determining individual damages'") (emphasis in original)). As Home Point demonstrated, there is no "classwide method" for determining damages in this case (nor have Plaintiffs offered one), because to be eligible for damages, each class member must show they were overcharged, which would require over 650 individualized mini-trials. *See* Petition at 17-18.

In their response brief, Plaintiffs assert the Home Point waived this argument by allegedly failing to raise it in the district court. Response at 15-16. Plaintiffs are wrong. Home Point repeatedly raised this argument before the district court. For example, in its brief in opposition to Plaintiffs' class certification motion, Home Point argued that commonality and predominance were not satisfied because, "in this case, each putative class member must *show that they were actually overcharged* in order to maintain Article III standing to participate in this lawsuit *and seek to*

1

*recover damages*." Class Cert. Opp. [ECF No. 48] at 16 (emphasis added). Home Point also argued that, "in order to determine whether a borrower is a member of the putative class and *whether the borrower would be able to state a RESPA claim for damages,* the Court would need to conduct nearly 700 individualized "mini-trials" on a number of issues, including: (1) *whether the borrower was overcharged for services . . .*" *Id.* at 29 (emphasis added).

In addition, in its supplemental briefing on class certification (which the district court permitted for both parties given intervening rulings in other cases), Home Point raised with the district court Judge Gallagher's holding that "RESPA damages are limited to three times the amount that each borrower was overcharged for title and settlement services as a result of the alleged kickbacks." NSA Motion [ECF No. 65] at 2-3 (quoting *Edmondson v. Eagle Nat'l Bank*, No. SAG-16-3938, 2023 WL 5336994, at *17 (D. Md. Aug. 18, 2023)). Home Point went on to explain that Plaintiffs had not presented in this case any classwide method for determining whether borrowers were overcharged and that "Plaintiffs cannot satisfy the predominance or commonality requirements of Rule 23 because the Court would need to conduct individualized inquiries to determine whether each putative class member was overcharged for any title services." *Id.* at 3.

Finally, at the August 31, 2023 hearing before Judge Bennett on Plaintiffs' motion for class certification, counsel for Home Point explained that one of the

2

fundamental questions in the case was "whether there was an overcharge that would result for each plaintiff and class member under RESPA." *See* Hearing Transcript [ECF No. 77] at 26 (excerpts attached as Ex. A). Home Point's counsel went on to explain that the district court would need to conduct over 650 individualized mini-trials to determine whether each class member was overcharged and thus whether each class member can recover damages under RESPA. *Id*. The need for these types of inquiries defeat the commonality and predominance requirements under Rule 23, as held by both this Court and the Supreme Court. *Behrend*, 569 U.S. at 34; *see also In re Marriott*, 78 F.4th at 683.

    Accordingly, Home Point repeatedly raised the issue of damages and the alleged overcharge before the district court both in its briefing and at oral argument. This issue therefore is properly before this Court for purposes of Home Point's petition. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) (preservation for appeal requires only that "the lower court be fairly put on notice as to the substance of the issue").

3

4

Dated:  November 8, 2023     Respectfully submitted,

/s/ *Thomas V. Panoff*
MAYER BROWN LLP
Thomas V. Panoff
Christopher S. Comstock
71 South Wacker Drive
Chicago, IL 60606
T:  (312) 782-0600
F:  (312) 701-8821
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com

*Attorneys for Defendant-Petitioner Mr. Cooper Group, Inc. f/k/a Home Point Financial Corporation f/k/a Maverick Funding Corporation*

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because this brief contains 663 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type.

Dated: November 8, 2023                /s/ *Thomas V. Panoff*
                                                              Thomas V. Panoff

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system pursuant to Local Rule 25(a)(1)(A)(i). I further certify that copies were sent to the following via U.S. First Class Mail and electronic mail:

Michael Paul Smith, Esq.
Melissa L. English, Esq.
Smith, Gildea & Schmidt, LLC
600 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 821-0070 / (410) 821-0071
Email: mpsmith@sgs-law.com
Email: menglish@sgs-law.com
*Counsel for Plaintiffs*

Timothy F. Maloney, Esq.
Drew B. LaFramboise, Esq.
Samuel P. Morse, Esq. #21955
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770-1417
(301) 220-2200 / (301) 220-1214
Email: tmaloney@jgllaw.com
Email: dlaframboise@jgllaw.com
Email: smorse@jgllaw.com
*Co-Counsel for Plaintiff*

/s/ *Thomas V. Panoff*
Thomas V. Panoff

6

# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
 2                           NORTHERN DIVISION

 3   SANDRA MOYER, RICHARD MARTIN,  )
     TERRY PATTERSON, JR., and      )
 4   YVONNE MATHEWS,                )
              Plaintiffs,           )   CIVIL CASE NO.
 5                                  )   1:20-cv-03449-RDB
                  vs.               )
 6                                  )
     HOME POINT FINANCIAL CORP.,    )
 7            Defendant.            )
     _____)   11:05 a.m.
 8
                      THURSDAY, AUGUST 31, 2023
 9                         Courtroom 5D
                        Baltimore, Maryland
10
                     TRANSCRIPT OF PROCEEDINGS
11                        MOTIONS HEARING
              BEFORE THE HONORABLE RICHARD D. BENNETT
12

13   For the Plaintiffs:

14   Melissa L. English, Esquire
     Michael Paul Smith, Esquire
15   Smith, Gildea & Schmidt, LLC
     600 Washington Avenue, Suite 200
16   Towson, MD 21204

17   For the Defendant:

18   Thomas V. Panoff, Esquire
     Mayer Brown, LLP
19   71 South Wacker Drive
     Chicago, IL 60606
20
     Also Present:
21
     Sandra Moyer
22   _____
            (Computer-aided Transcription of Stenotype Notes)
23
             Reported by: Amanda L. Longmore, RPR, FCRR
24                Federal Official Court Reporter
                  101 W. Lombard Street, 4th Floor
25                 Baltimore, Maryland  21201
                           410-962-4474
```

22

**Motions Hearing - 8/31/23**

1  loans, and those branches were not confined to handling
2  transactions with properties in only Maryland. The employees
3  at those branches could reach out and do a transaction in
4  California. They could reach out and do a transaction in New
5  York.
6      THE COURT: Well, the defendants have raised the
7  issue that there are different regulatory requirements and
8  different requirements on settlement sheets and what have you,
9  and to include those not in Maryland would in some way affect
10 typicality because there may or may not be different
11 regulations attendant to it.
12     MS. ENGLISH: Your Honor, there are not different
13 regulations that govern the settlement sheet, the HUD-1
14 settlement sheet, because of the time period we've got here,
15 the TRID disclosure are federal documents, federally mandated
16 sheets that are dictated -- the content of which are dictated
17 by federal statutes and federal regulations. So there are not
18 differences as it comes to what are going to be the controlling
19 loan documents in this case. The only variations that you have
20 are where the properties that are secured under the loans at
21 issue were located. But the most important thing, Your Honor,
22 is that --
23     THE COURT: I could be wrong, I'm going to be asking
24 Mr. Panoff in a moment, but I think Judge Gallagher addressed
25 that issue specifically in the *Edmondson* case, if I'm not

23

**Motions Hearing - 8/31/23**

1  mistaken, and she found that there wasn't any merit to the
2  challenge of typicality in *Edmondson*, I believe, in terms of
3  that same argument was raised in that case.
4      MS. ENGLISH: Your Honor, I think there are a couple
5  things to take into consideration when looking at the *Edmondson*
6  case. The first is that Judge Gallagher made a ruling in that
7  case on the method of calculating damages and limiting the
8  damages in that case to the overcharges that were challenged to
9  the members of that class.
10    To be candid, we believe that that is error and is
11 inconsistent with the plain statute of 2607(d)(2). But what
12 that injected --
13     THE COURT: But she did rule in favor of your
14 position with respect to typicality.
15     MS. ENGLISH: Yes, we did. She did. Yes.
16     THE COURT: Okay. I just --
17     MS. ENGLISH: I think I may misunderstand your
18 question.
19     THE COURT: Just on the issue of typicality, we're
20 not going to get down to that issue.
21     MS. ENGLISH: Yes. She did rule in favor of us on
22 typicality both at class certification as well as at summary
23 judgment, Your Honor, and we have a class of more than a
24 thousand transactions that will be moving forward in that class
25 as it is amended today.

24

**Motions Hearing - 8/31/23**

1      THE COURT: Well, thank you. Let me hear from
2  Mr. Panoff, if I can, on typicality. Essentially the matter of
3  typicality certainly flies in the face of Judge Gallagher's
4  ruling in *Edmondson* and in terms of the overall nationwide
5  scope of this fraud, so I'll be glad to hear from you on the
6  matter of typicality.
7      MR. PANOFF: Right, Your Honor. And we agree with
8  Judge Gallagher on the typicality point. There are a lot of
9  close calls, Your Honor, and this is not a close call. There
10 are 25 states for whom they have presented no evidence at all.
11 All four named plaintiffs are just from Maryland. They have
12 not introduced a shred of evidence for the 25 other states or
13 jurisdictions.
14     THE COURT: How is that distinguishable from
15 *Edmondson*? Was there evidence as to other states in *Edmondson*?
16     MR. PANOFF: They did have initial -- let me step
17 back. This case is by far the weakest of any I've seen of the
18 dozen or so that have blanketed this docket in the last decade
19 or so. They have produced no evidence at all in this case tied
20 to All Star and Home Point.
21    What they've used is evidence that's involving All Star
22 generally and then other lenders like *West Town* or others that
23 are out there. So they've done nothing in this case. This
24 case was a pure kind of cut-and-paste job, to be frank here,
25 from others. And we point this out in our briefing and it

25

**Motions Hearing - 8/31/23**

1  shows that this is -- I believe they kind of thought that this
2  would be kind of like a conveyer belt. They are getting good
3  traction with class certification on a lot of these cases and
4  they thought, oh, look, here's another originator, let's go
5  after Home Point. But if you look at the complaint, if you
6  look at their class certification motion, there is not one
7  document that comes remotely close to tying Home Point to
8  anything here.
9      THE COURT: Let me ask you this: The point of all of
10 these cases as to all title companies and all financial
11 institutions, all of them, and I know that you've raised the
12 issue of different regulations in different states and saying
13 there's not any evidence as to the other 25 states, but don't
14 all of them -- I don't know that there may or may not be some
15 states that have additional attachments to these settlement
16 sheets, but all these cases involve federal loan forms, all of
17 these cases involve HUD-1s, do they not?
18     MR. PANOFF: They do involve HUD-1, but that's not
19 the issue, Your Honor.
20     THE COURT: But my point is that in the issue in
21 terms of typicality in terms of regardless of where the fraud
22 occurred in the kickback scheme and how it was utilized, one of
23 the factors, which is true throughout, is the matter of the
24 federal documentation that's required of all these loans and
25 all of them, if I'm not mistaken, correct me, Mr. Panoff, but

## Page 26

Motions Hearing - 8/31/23

1  all of them involve HUD-1s, correct?  Is that not correct?
2      MR. PANOFF:  They do involve HUD-1s but that's only
3  scratching the surface of the question the Court needs to ask
4  here.  The question is not whether there was a HUD-1.  ==The==
5  ==question is whether there was an overcharge that would result==
6  ==for each plaintiff and class member under RESPA.  That would be==
7  ==like saying each of these houses had a garage but the question==
8  ==really is, you know, was there a car in the garage.  And that's==
9  ==what we need to get to here, was there an overcharge.  And to==
10 ==get to that question of whether there was an overcharge under==
11 ==RESPA and whether there was a --==
12     ==THE COURT:  As to each one of these 669.==
13     ==MR. PANOFF:  669 and then, yes, to determine that==
14 ==overcharge question,== Your Honor has to look at what, as Your
15 Honor was talking about before, what the regulatory scheme was
16 in each case.  So for example, Maryland is a --
17     THE COURT:  Well, Judge Gallagher did not feel that
18 you have to address the regulatory scheme in each case.
19     MR. PANOFF:  No, she struck the other states even
20 broader than that.  She said you don't have any evidence as to
21 these other states, I'm going to strike those from the putative
22 class and just go forward with the states where you have the
23 named representatives.  So this isn't even a close call.
24 They've introduced no evidence at all as to these other 25
25 States.  So that's issue one on typicality.  Those other states

## Page 27

Motions Hearing - 8/31/23

1  have to go very clearly.  But the other issue on typicality --
2      THE COURT:  So as to typicality, first of all, in
3  terms of the size of the class actually who is in the class.
4      MR. PANOFF:  Right.  And then the other issue on
5  typicality that's important, Your Honor, too, and this also
6  goes to Judge Gallagher's ruling is she tied the question to
7  the loan officers at issue because she said you can't just
8  assume that there is a nationwide conspiracy that goes across
9  all these states and all these different loan officers.  As we
10 pointed to in our briefing, for the four named class
11 representatives here, there are only three Home Point loan
12 officers involved out of a hundred or more that are tied to all
13 the putative class members.
14     As Judge Gallagher said, you can't impute what might exist
15 as to the three for the Baltimore area branches to random
16 branches in California or elsewhere.  And that aspect of the
17 typicality requirement is just as important here as it has to
18 be tied to the loan officers who are allegedly part of the
19 scheme.
20     So if we step back and look at this, this whole case is
21 built on a number of assumptions here.  It's LEGO blocks on top
22 of each other of assumptions here.  First, they have no
23 evidence as to Home Point at all.  Then they really have no
24 evidence as to these three loan officers, but yet they're
25 trying to take it to all these other states and all these other

## Page 28

Motions Hearing - 8/31/23

1  loan officers when there isn't a shred of evidence there.  That
2  raises core typicality issues.  And as we've pointed out in our
3  briefing and the Supreme Court has been very clear, at Rule 23
4  stage here, it's not a pleading stage.  This is a rigorous
5  analysis that the Court has to perform with evidentiary basis.
6  That's under the *Dukes* ruling from the Supreme Court in 2011
7  and *Comcast* in 2013.
8      This isn't a motion to dismiss or pleadings phase where we
9  say, you know, we'll accept it as true.  They had to come
10 forward with evidence by this point.  They've done none of
11 that.  They had a year of discovery.  They didn't introduce one
12 expert witness in this case, unlike their others.  They didn't
13 use the Wells Fargo chart in this case, like the others.  They
14 didn't even take a deposition of Home Point in a year.  We
15 deposed all four named plaintiffs.  They did nothing in
16 discovery in this case and want to come to this moment and say,
17 ah-ha, we've meet the standard for rigorous analysis and we've
18 met the standard for an evidentiary basis.  They haven't come
19 close to that, Your Honor.  So we'll get to that in
20 predominance, but it's certainly the case here when it comes to
21 the typicality analysis.
22     THE COURT:  And so, again, the thrust of your
23 argument is in terms of typicality, they meet typicality
24 perhaps with a far smaller class but do not meet it with the
25 class as alleged in this case.

## Page 29

Motions Hearing - 8/31/23

1      MR. PANOFF:  Well, let's start in reverse order.
2  Clearly they don't allege it with the class and we don't even
3  think they allege typicality for Maryland class because they've
4  only tied it allegedly --
5      THE COURT:  They don't tie it to the three loan
6  officers.
7      MR. PANOFF:  Three loan officers, and even for them
8  they don't have evidence, so we think across the board they
9  fail on typicality.
10     THE COURT:  Thank you very much.  I'll give you time
11 on rebuttal for typicality, Ms. English.
12     MS. ENGLISH:  Thank you, Your Honor.  Rigorous
13 analysis does not mean a decision on the merits on the case.
14 At this stage, the Court is barred from making merits
15 decisions, the merits decisions that the defendant is --
16     THE COURT:  Apparently Judge Gallagher has made a
17 decision in terms of Judge Gallagher has very much narrowed
18 your class in *Edmondson*, has she not?
19     MS. ENGLISH:  It was, Your Honor.
20     THE COURT:  And was that a credibility analysis?
21     MS. ENGLISH:  No, it was not a credibility analysis,
22 Your Honor.  What it was was it's summary judgment which is
23 governed by a different standard, as this Court well knows,
24 than is a class certification motion in the first instance.
25     THE COURT:  I confess, perhaps I should know this,

## Motions Hearing - 8/31/23

30

1  what is the class that was ultimately certified by Judge
2  Gallagher?
3       MS. ENGLISH: Your Honor, the class that was
4  ultimately certified was the class --
5       THE COURT: Prior to the summary judgement stage.
6       MS. ENGLISH: Oh, prior to the summary judgement
7  phase? It was virtually indistinguishable from the class that
8  is proposed to be defined today, virtually indistinguishable.
9  And I will be very clear about this, Your Honor. Judge
10 Gallagher in *Edmondson*, which is a different case in many
11 respects --
12      THE COURT: Yes, it is.
13      MS. ENGLISH: -- but she did not excise out of the
14 class state by state, finding one state here because of their
15 regulations don't meet typicality and another state here
16 doesn't meet regulation because they don't meet typicality.
17 That's not what she did at all. And, in fact, she redefined
18 the class to deal with what she determined to be predominance
19 issues that had arisen based on her summary judgment decision
20 about the method of calculating damages. And so those to the
21 extent they were typicality --
22      THE COURT: So this analysis by Judge Gallagher was
23 well past the matter of certification stage.
24      MS. ENGLISH: It was, Your Honor. It was, and it's
25 not at this pleading stage. And frankly, Your Honor, the issue

31

1  of overcharge, that's an Article III standing issue. That's
2  not an element of a RESPA claim. A RESPA claim just requires
3  an agreement for the referral of business, exchange of a thing
4  of value, and actual referrals. It doesn't say anything about
5  an overcharge. Overcharge comes into the analysis on the basis
6  of Article III standing in demonstrating harm to establish a
7  concrete injury for Article III standing. So we're going right
8  back through into the circle, into the Article III standing
9  circle, and we would reiterate our arguments at that point.
10      But the Judge has found that the class members, the more
11 than 1,000 class members that remain after the Court's amended
12 decision, they come from, I would argue -- I don't know that
13 number off the top of my head, but I bet there are more than 20
14 states that are represented within the *Eagle* class that will be
15 proceeding to trial.
16      THE COURT: Well, Ms. English, I'll confess to you
17 that -- again, another purpose for having this hearing is I
18 will confess to you that I don't really see the utility in
19 permitting an overly broad class to be certified and then
20 getting to the end of the game and realizing that the class has
21 been -- that too large a class has been certified and then you
22 have to weave through summary judgment issues at the end of the
23 line.
24      I think it doesn't serve any purpose. I think it's
25 inefficient. I think it's wasteful of time of the Court. I

32

1  think it's wasteful of time and money to the clients. I think
2  it's wasteful of the time of the lawyers if that's the case.
3  So I'm a little bit more inclined to have this inquiry be at
4  the certification stage, with all due respect to Judge
5  Gallagher. You're correct this is not a pleading issue, but it
6  does appear that there is certainly -- in *Edmondson* there was
7  certainly a narrowing ultimately of the class at some point in
8  time.
9       So if that's the case, my attitude is it should be done
10 now. It shouldn't wait until -- let's put it this way. We
11 shouldn't have a time of everyone wasting six or seven months
12 when 80 percent perhaps aren't in the class but the 20 percent
13 are. That doesn't really serve a purpose and given how long
14 this has been at issue, I'm trying to get this on a faster
15 track if it stays on a track. So that's my thought. And to
16 the extent that Mr. Panoff has proffered that there are only
17 three loan officers as to the matter of kickbacks as to
18 evidence, what is your response as to that in terms of this
19 typicality question?
20      MS. ENGLISH: Your Honor, we have alleged and pled in
21 the complaint far more than three loan officers. The three
22 loan officers that we're talking about are just the loan
23 officers that are the loan officers that were responsible for
24 the named plaintiffs and the class representatives.
25      THE COURT: Right.

33

1       MS. ENGLISH: We have loan officers, we have
2  referrals across -- the great majority of referrals I would say
3  are across about eight different -- well, we can say eight
4  different branches of Home Point.
5       THE COURT: And those branches located where?
6       MS. ENGLISH: They're a little bit of everywhere, but
7  they're primarily in Maryland.
8       THE COURT: How many in Maryland of the eight?
9       MS. ENGLISH: One, two, three, four, five, six.
10 There are six that are in Maryland. And they are -- and I can
11 set this out more in detail.
12      THE COURT: Okay. But you say there are eight
13 branches involved in this and six of the eight are in Maryland;
14 is that what you're saying?
15      MS. ENGLISH: Yes. And then there are two in Ohio
16 and then there's one in --
17      THE COURT: Now we're up to nine.
18      MS. ENGLISH: Yes. Ballston Spa, you're right, Your
19 Honor, nine. And the reality is, Your Honor, that we have
20 connections to the branches that referred the greatest number
21 of loans under the kickback agreement, but the reality is also
22 that we have the elements of the RESPA claim and if we're able
23 to prove these agreements to refer loans. And under this
24 kickback agreement, Your Honor, it's not that All Star went out
25 one day and started and said, okay, everybody at Home Point